**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

------------------------------------------------------------------X

DUDLEY STEWART, Individually and as Parent
and Natural Guardian of SPIKE STEWART and
RUBY STEWART; TAMMY ROSE and
EDUARDO VALENTIN, Individually and as                          **COMPLAINT**
Representatives of a Class of Similarly Situated
Individuals and Property Owners,

                              Plaintiffs,

              -against-

THE METROPOLITAN TRANSPORTATION
AUTHORITY,

                              Defendant.

------------------------------------------------------------------X

Plaintiffs, Dudley Stewart, Individually and as Parent and Natural Guardian of Spike Stewart and Ruby Stewart, Tammy Rose, and Eduardo Valentin, individually and as representatives of a class of individuals and property owners who have been harmed and are continuing to be harmed by lead and other hazardous materials released from the elevated structures of the Defendant Metropolitan Transportation Authority's Flushing Subway Line, through their attorneys, Phillips & Paolicelli LLP, allege upon information and belief, as follows:

### Introduction

{00032812}                              1

1.      The Number 7 or Flushing Subway Line ("Flushing Line") runs between the 34th Street Station (Hudson Yards) located in Manhattan and the Main Street Flushing Station located in the County of Queens.

2.      The Flushing Line is owned, operated and maintained by Defendant Metropolitan Transportation Authority ("MTA").

3.      For virtually its entire length in Queens County, it is an elevated subway line and operates on elevated structures which are owned, operated and maintained by the MTA.

4.      These elevated structures are located on and over busy and heavily populated streets, avenues, and boulevards, including, Queens Boulevard and Roosevelt Avenue.

5.      Immediately adjacent to, and often directly underneath these elevated structures are many residential properties, commercial properties, as well as parks, schools, houses of worship, nursery schools and health care facilities.

6.      In addition, as these elevated structures cover crowded and busy thoroughfares, each day many individuals, including small children, and pregnant women are obliged to walk or pass directly underneath these elevated structures in order to cross the street or use the subway.

7.      Grocery stores selling produce or fresh foods are located on these streets. They place the fruits, and vegetables they sell on stands outside the front

doors of their premises where these foods are directly exposed to toxins released from the over head elevated structures.

8.     Also, street vendors who sell foods (e.g., hot dogs, pastries, coffee) are located and licensed such that their carts are directly underneath these elevated structures.

9.     Disabled individuals who must use wheelchairs to move about also are obliged to move their wheelchairs under these elevated structures in order to use the Flushing Line or even cross the street.

10.     In addition, workers engaged in operating, servicing, and maintaining the Flushing Line are daily present in and around and underneath these elevated structures.

11.     The first elevated structures on the Flushing Line were built prior to June 1915, and were painted with lead-based paint. The same is true of virtually all of the elevated structures that were subsequently erected on this line.

12.     The Flushing line elevated track and supporting structures have been neglected and poorly maintained for decades. Copious amounts of peeling lead-based paint, rust, structural wear and pigeon droppings are visible to, and falling on, pedestrians and property under and adjacent to the train trestle.

13.     Subway trains run over the tracks of the Flushing line approximately every 4 minutes, and more frequently during the morning and evening rush hours.

14.    The subway trains cause the supportive structures to vibrate, emitting lead-based paint chips and lead dust, other toxins and reaching volume levels greater than 100 decibels as trains arrive and leave the above-ground stations in Queens.

15.    Lead and lead-based paint are highly toxic substances.

16.    Exposure to lead and lead-based paint at even vanishingly small quantities has the capacity to inflict severe harm on human beings generally. That is especially true for young children, pregnant women, and those who are exposed *in utero.*

17.    A severe public health emergency now exists in and around the Flushing Line and its elevated structures due to the release of lead, lead-based paint, lead dust, lead-based paint chips and deteriorated lead-based paint and other toxic substances from these elevated structures into the air and premises and on to the soil, ground, sidewalks and roads underneath and adjacent to these structures.

18.    This release has caused, continues to cause and, if unabated, will continue to cause personal injury and harm to all individuals exposed to these releases.

19.    It also has caused, continues to cause, and, if unabated, will continue to cause property damage as well as loss of property owners' ability to enjoy the use of their property.

{00032615}                          4

20.    Defendant   MTA   has   wrongfully,   knowingly,   deliberately, intentionally,   and as a matter of policy permitted a dangerous condition to exist and to continue to exist by:

    a.  causing these structures to be covered with lead-basedpaints and other toxic substances in the first place,

    b.  failing to adequately inspect, maintain and repair these elevated structures,

    c.  failing to remediate and/or abate the dangerous conditions respecting these elevated structures,

    d.  failing to clean up and otherwise minimize the hazardous conditions caused by the release of lead, lead-based paint, lead dust, lead-based paint chips and deteriorated lead-based paint and other toxins from these structures, and

    e.  falsely representing that no health hazard exists when it knows that the opposite is the case.

21.    Accordingly, it is the purpose of this lawsuit to compel Defendant MTA to abate and remediate the hazardous conditions described above.

22.    Plaintiffs do not seek traditional compensatory or punitive damages in this case. The relief sought is injunctive and declaratory, as well as the award of attorneys' fees as may be appropriate.

{00032615}                               5

**Jurisdiction and Venue**

23.    This Court has Jurisdiction pursuant to the following:

a.  42 U.S.C. § 7604 because:

   i.  Defendant MTA has violated and continues to violate an emission standard or limitation promulgated under the Clean Air Act, specifically the National Ambient Air Quality Standards (NAAQS) for Lead.

   ii.  The district courts have jurisdiction, without regard to the amount in controversy or the citizenship of the parties, to enforce such an emission standard or limitation.

b.  42 U.S.C. § 1983 because:

   i.  Defendant MTA is a public benefit corporation which exists under color of and pursuant to State Law;

   ii.  Defendant's misconduct as described herein proximately caused the deprivation of rights, privileges, or immunities secured by the Constitution and laws of the United States possessed by Plaintiffs and the class they seek to represent.

c.  28 U.S.C. § 1332(d)(2) because:

    i.    Defendant is a citizen of the State of New York, and some class members constituting more than one-third of the entire proposed class are citizens of States other than New York;

    ii.    The relief sought in this case creates an amount in controversy in excess of five million ($5,000,000) dollars exclusive of interest and costs;

    iii.    The number of individuals in the class are in excess of one hundred;

    iv.    Defendant is a governmental entity against whom this Court is not foreclosed from ordering relief.

d.   45 U.S.C. § 51 because:

    i.    Defendant MTA is a common carrier by railroad engaged in commerce between States;

    ii.    Those members of the class constitute a subclass who are transit workers, at all relevant times were and are employees of Defendant MTA;

    iii.    Members of the proposed subclass suffered injury and damages while employed at Defendant MTA in interstate commerce.

24. Pursuant to 28 U.S.C. § 1367, the supplemental jurisdiction of this Court is sought over claims arising under State law.

25.     Venue exists in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this action and the property that is the subject of this action occurred or is situated in this district.

**Parties**

26.     Defendant Metropolitan Transportation Authority ("MTA") is a public benefit corporation which exists pursuant to and under color of the laws of the State of New York.

27.     The MTA is responsible for public transportation serving *inter alia* twelve counties in downstate New York (New York, Kings, Queens, Bronx, Nassau, Suffolk, Westchester, Richmond, Rockland, Orange, Duchess, and Putnam Counties).

28.     System wide, the MTA carries on average over 5.7 million passengers per weekday.

29.     The MTA is the largest public transit authority in the United States.

30.     Among the facilities that the MTA owns and operates is the Number 7 or Flushing Line ("Flushing Line") which operates between the 34th Street Station (Hudson Yards) in Manhattan and the Main Street Flushing station located in Queens County.

{00032615}                                 8

31.   The Flushing Line has been in operation since June 13, 1915.

32.   Most of the Flushing Line located within Queens County is an elevated subway line.

33.   The Flushing Line is also a route used by individuals who wish to travel from Manhattan and elsewhere to LaGuardia Airport and Citifield. Many of these individuals are neither citizens nor residents of the State of New York.

34.   The MTA both owns and is responsible for maintaining the aforesaid elevated subway line.

35.   Plaintiff Dudley Stewart is a citizen and resident of the County of Queens and the State of New York who owns a cooperative apartment unit on 80th Street proximate to Roosevelt Avenue which is roughly 500 feet from the elevated structures of the Flushing Line.

36.   Mr. Stewart and his wife, Laura are the parents and natural guardians of their two minor children, the infant plaintiffs, Spike, aged twelve, and Ruby, aged eight. On a frequent basis, Mr. Stewart and the children walk underneath the elevated structures of the Flushing Line and are thus continuously exposed to the lead, lead-based paint, lead dust, lead-based paint chips and deteriorated lead-based paint and other toxins that are released from these structures.

37.   Plaintiff Tammy Rose is a citizen and resident of the County of Queens and the State of New York who owns and operates a number of daycare

centers which are located in Queens County. One of these daycare centers is the Little Friends School which is located in Sunnyside, Queens, located at 43-42 47th Street in Sunnyside. The premises of that Little Friends School is located less than 100 feet from the elevated structures of the Flushing Line.

38.     There is an outdoor play space which adjacent to and part of the premises of the Little Friends School.

39.     The children who attend this school are between the ages of 2 and 5 years of age.

40.     Both Ms. Rose and children like those attending her school are at risk of exposure to lead, lead-based paint, lead dust, lead-based paint chips and deteriorated lead-based paint and other toxins that are released from the elevated structures of the Flushing Line.

41.     Plaintiff Eddie Valentin is a citizen and resident of the County of Queens and the State of New York who owns and operates several bars and restaurants located in Queens County, including the Club Evolution which is located at 76-19 Roosevelt Avenue.

42.     This premises is essentially underneath the elevated structures of the Flushing Line.

43.     Mr. Valentin is at risk of exposure to lead, lead-based paint, lead dust, lead-based paint chips and deteriorated lead-based paint and other toxins that are released from the elevated structures of the Flushing Line.

## Class Allegations

44.     This action fulfills all of the requirements of Fed. R. Civ. P 23 and thus may proceed as a class action.

45.     The class, which is comprised of, at a minimum, tens of thousands individuals and property owners is so numerous that joinder of all members of the class is impractical, *see*, Fed. R. Civ. P. 23(a)(1).

46.     The proposed class may be defined as follows[1]:

a. The owners of real (residential) property, including the owners of cooperative or condominiums which are located proximate to the elevated structures of the Flushing Line;

b. Owners of commercial properties which are located proximate to the elevated structures of the Flushing Line;

c. Individuals who reside in the vicinity of the elevated structures of the Flushing Line who continuously pass underneath or in the immediate proximity of the elevated structures of the Flushing Line.

---

[1] The groups described in this paragraph may be viewed as sub-classes, although they essentially seek the same or related relief.

d. Riders of the Flushing Line who pass underneath or proximate to the elevated structures of the line as they enter and leave the subway;

e. Employees, and subcontractors of the Flushing Line who pass underneath or proximate to these elevated structures while performing their duties;

f. Individuals with disabilities who are obliged to use wheelchairs while crossing the street under these elevated structures, or while using the subway; and

g. Any one else who might be regularly exposed to lead and other toxins released from these elevated structures.

47.    There are questions of fact and law that are common to the entire class, *see*, Fed. R. Civ. P. 23(a)(2).

48.    The claims of the proposed class representatives are typical of the claims of the entire class, *see*, Fed. R. Civ. P. 23(a)(3).

49.    The proposed class representatives will fairly and adequately represent the interests of the class, and have retained competent counsel who are capable of prosecuting this action, *see*, Fed. R. Civ. P. 23(a)(4).

50.    The Defendant MTA has acted and/or refused to act on grounds that apply generally to the entire class, so that final injunctive or declaratory relief is appropriate respecting the class as a whole, *see*, Fed. R. Civ. P. 23(b)(2).

51.    Prosecuting separate actions by individual class members would create a risk of establishing inconsistent adjudications that would impose incompatible standards of conduct for Defendant MTA, *see*, Fed. R. Civ. P. 23(b)(1)(A).

52.    Class action treatment is superior to other available methods for adjudicating this dispute, *see*, Fed. R. Civ. P. 23(b)(3).

53.    There exist no insurmountable difficulties to maintaining this case as a class action, *see*, Fed. R. Civ. P. 23(b)(3)(D).


## FACTUAL ALLEGATIONS

### A. The Toxic Nature of Lead and Other Hazardous Conditions of the Flushing Line

54.    Lead is a naturally occurring elemental metal found in the earth's crust.

55.    Lead is easily mined and refined. It long been used by humans in a wide variety of applications.

56.     The mining, refining and concentration of lead in these applications renders the lead far more dangerous and toxic that naturally occurring lead dispersed in the Earth's crust.

57.     Over the past three centuries, with the coming of the industrial revolution the use of lead has expanded exponentially.

58.     The greatest increase in the use of lead occurred between 1950 and 2000.

59.     A substantial portion of this great increase in the use of lead in the past century derives from the widespread use of lead paint.

60.     Lead, especially as used in lead paint, is a toxin that is well associated with a wide variety of human ailments and conditions which include:

     a.  Brain Damage

     b.  Kidney damage

     c.  Hearing loss

     d.  Reduced IQ

     e.  Delayed development

     f.  Behavioral problems

     g.  Blindness or vision loss

h. Neuro-muscular disorders (including tremors, pain, delayed reaction times, loss of coordination, convulsions, weakness and seizures)

i.  Wrist and foot drop

j.  Decreased libido

k. Depression

l.  Cognitive deficits

m. Memory loss

n.  Personality disorders

o.  Delirium

p.  Coma

q.  Death

r.  Sperm dysfunction

s.  Complications of Pregnancy

t.  Birth defects

u.  Anemia

v.  Vertigo

w. Parathesia

x.  Encephalopathy

y.  Impotence

z.  Joint pain

aa. Hypertension

bb. Neuropathy

cc. Miscarriage

dd. Kidney cancer

ee. Brain tumors

ff. Lung cancer

gg. Genetic Mutation

61.   There is no safe level of lead exposure.

62.   For instance, blood lead values that were once thought to be safe have now been associated with IQ deficits, behavioral disorders, slowed growth, and impaired hearing.

63.   Lead is a cumulative poison.

64.   Once lead is introduced into the environment it persists, producing contamination of soil, air, water, and dust.

65.   Once lead is introduced into the body, it is not eliminated by metabolism or excretion. Rather it is stored in the tissues of the body (e.g., in bone and fatty tissue) where it continues in cumulative fashion to cause harm.

66.   Lead paint is the major source of lead poisoning in children today.

67.     Even low levels of lead exposure have been demonstrated to affect IQ, ability to pay attention and academic achievement.

68.     The recommended CDC lead level in children for community intervention since 1991 is 10µ/dl (micrograms per deciliter of blood).

69.     The CDC lowered the lead level of concern for children under 6 years of age to 5 µ/dl of blood in 2012.

70.     A child with a blood lead level of 5 µ/dl has a higher blood lead level than 97.5 percent of children in the United States.

71.     In 2015, 5,371 children under the age of 6 in New York City were identified as having blood lead levels above the CDC reference level.

72.     The children identified with high lead levels in 2015 are in addition to the tens of thousands of children identified in the previous 5 years.[2]

73.     Among the other toxic substances that are released from the elevated structures of Flushing Line are the following: a) copious amounts of bird droppings; b) chemicals, dyes, pigments and other metals which are constituents of the lead paint that covers these structures; as well as c) metals, rust, and particulate matter which are released from the structures themselves, as distinct from the paint which covers these structures.

---

[2] Report on the New York City Council on Progress in Preventing Childhood Lead Poisoning in New York City, September 30, 2016.

74.    These other toxins also are harmful to human health and contribute to the dangerous conditions and harms that Defendant has wrongfully inflicted.

75.    The presence of lead, lead-based paint, lead dust, lead-based paint chips, deteriorated lead-based paint and other toxins released from the elevated structures of the Flushing Line has damaged the property in and around and adjacent to these structures.

76.    In addition exposing people to toxic substances, the decrepit condition of the Flushing Line elevated track and its supporting structures is causing hazardous levels of noise pollution in and around each elevated subway stop.

77.    The frequent subway trains cause the decaying supportive structures to vibrate, emitting lead paint dust, and reaching volume levels greater than 100 decibels has trains arrive and leave the above-ground stations in Queens.

78.    The noise pollution is in violation of New York City law, NYC Local Law 113 of 2005, and New York state law, NY CLS Pub A § 1204(a) Rapid transit noise code.

79.    The CDC and EPA both have found that noise pollution of this magnitude causes permanent hearing loss in adults and children and can lead to speech delay, sleep disturbances, psychological problems, and hypertension.

### B. Defendant's Misconduct

80.    At all relevant times, Defendant MTA has been fully aware of the hazardous nature of the lead-based paint and other toxins located on the elevated structures of the Flushing Line.

81.    At all relevant times, Defendant MTA has been aware that lead, lead-based paint, lead dust, lead-based paint chips, deteriorated lead-based paint and other toxins were being released from the elevated structures of the Flushing Line and were landing on adjacent properties and individuals both proximate to and underneath these structures.

82.    At all relevant times, Defendant MTA was aware of the dangerous propensities of lead-based paint, lead dust, lead-based paint chips, deteriorated lead-based paint and other toxins that were being released from the elevated structures of the Flushing Line.

83.    At all relevant times, Defendant MTA failed to inspect or adequately inspect the elevated Structures of the Flushing Line as well as the surrounding areas to ascertain whether a public health hazard existed or was likely to exist in and around the elevated structures of the Flushing Line.

84.    At all relevant times, Defendant MTA failed to test or adequately test the elevated structures of the Flushing Line as well as the surrounding areas to ascertain whether a public health hazard existed or was likely to exist in and around the elevated structures of the Flushing Line.

{00032615}                          19

85.    At all relevant times, Defendant MTA failed to paint or adequately paint, repaint, repair, abate, clean up, remediate, or otherwise act to prevent or eliminate hazards derived from the release of toxic substances from the elevated structures of the Flushing Line into the surrounding community.

86.    At all relevant times, Defendant MTA falsely gave assurances that no hazards existed in and around the elevated structures of the Flushing Line, thereby encouraging class members and the general public to walk underneath and in the vicinity of these elevated structures.

87.    The aforesaid misconduct was taken a) negligently; b) recklessly; c) with wanton disregard for the rights and well being of others, including class members; d) intentionally; e) as a matter of policy; f) in conscious disregard of the likelihood that the members of the class would be gravely harmed; g) in violation of New York State statutes, regulations, local laws, and common law; and h) with deliberate indifference exceeding both negligence and even gross negligence, to the safety and rights of Plaintiffs and class members.

88.    Defendant MTA also has a special relationship with Plaintiffs and class members in that it has assumed a responsibility to safeguard them from the hazards the MTA both created and inflicted upon Plaintiffs and the class.

89.    Defendant MTA's misconduct both created and exposed Plaintiffs and the class members to hazards which they otherwise would not have faced. Thus the

MTA both caused lead and other toxins to be on the elevated structures in the first place and also failed to maintain these now toxic structures in a safe fashion.

90.     The aforesaid misconduct proximately caused injuries and harms which create the need for the remedies described below.

91.     Among the harms proximately caused by Defendant MTA's misconduct are:

a.  Bodily injury, including sub-clinical injury and damage to the cells and tissues of Plaintiffs and class members' brain and central nervous system;

b.  Property damage caused by the presence of lead, lead paint and other toxins on Plaintiffs' and class members' properties;

c.  Inverse condemnation of the aforesaid properties; and

d.  Loss of the enjoyment of the aforesaid properties;

### C. Plaintiffs' Proposed Remedy

92.     Plaintiffs seek equitable and injunctive relief.

93.     Specifically they seek a permanent injunction which would Order the MTA to perform the following:

a.  Have an independent court appointed, qualified inspector conduct a thorough and immediate investigation relating to lead and any other environmental hazard with respect to the elevated structures of the Flushing Line;

b. Promptly and publically report the results of the aforesaid investigation;

c. Periodically undertake to have an independent court appointed qualified inspector conduct periodic repeat investigations;

d. Promptly and publically report the results of the aforesaid investigations;

e. Have an independent and qualified court appointed inspector immediately investigate the air, streets and soil underneath and in the vicinity of the elevated structures of the Flushing Line for the presence of lead and other toxic substances which may have been released from these structures.

f. Promptly and publically report the results of the aforesaid investigation;

g. Periodically undertake to have an independent qualified court-appointed inspector conduct repeat investigations of the air, streets and soil;

h. Promptly and publically report the results of the aforesaid investigation;

i. Abate, remediate, cure or otherwise eliminate all hazards associated with the presence of lead, lead-based paint, lead dust,

lead-based paint chips, deteriorated lead-based paint or other toxins located on the elevated structures of the Flushing Line;

j. Abate, remediate, cure or otherwise eliminate all hazards associated with the presence of lead, lead-based paint, lead dust, lead-based paint chips, deteriorated lead-based paint or other toxins located on the elevated structures of the Flushing Line which may be revealed by the periodic investigations described above;

k. Abate, remediate, cure or otherwise eliminate all hazards associated with the presence of lead, lead-based paint, lead dust, lead-based paint chips, deteriorated lead-based paint or other toxins located in the air, streets and soil underneath and in the vicinity of the elevated structures of the Flushing Line which are revealed by immediate investigation;

l. Abate, remediate, cure or otherwise eliminate all hazards associated with the presence of lead, lead-based paint, lead dust, lead-based paint chips, deteriorated lead-based paint or other toxins located in the air, streets and soil underneath and in the vicinity of the elevated structures of the Flushing Line which may be revealed by the periodic investigations described above;

m. Provide to class members, upon request, blood or other appropriate testing to ascertain whether they suffer from clinical findings related to the release of toxins from the elevated structures of the Flushing Line that require medical intervention;

n. Pay the fees and expenses of Plaintiffs' counsel; and

o. Grant such other relief which to the Court may be just.

## CAUSES OF ACTION

### I.    CIVIL RIGHTS ACT,  42 U.S.C. § 1983

94.    Plaintiffs repeat and re-allege Paragraphs 1 through 93 as is set forth at length herein.

95.    At all relevant times Defendant MTA acted and/or refrained from acting under color of statutes, ordinances, regulations, custom or usages of the State of New York.

96.    Plaintiffs and class members are either citizens of the United States or persons within the jurisdiction of the United States.

97.    The conduct of Defendant MTA has proximately caused the deprivation of rights, privileges or immunities possessed by Plaintiffs and class members which are secured by the Constitution and laws of the United States.

98.     Among these rights are Plaintiffs and class members' substantive due process rights, secured by the Fifth and Fourteenth Amendments, to be protected from bodily harm especially where as here, that harm is deliberately and knowingly inflicted as a matter of policy and constitutes the functional equivalent of an assault or battery.

99.     Also among these rights are Plaintiffs and class members' rights secured by the Fifth and Fourteenth Amendments, not to be deprived of life or property without due process of law, and also to protect private property from being taken (inverse condemnation) for public use without just compensation, especially where, as here, the taking was knowingly and deliberately inflicted as a matter of policy.

100.   In addition, it appears that the misconduct described above was directed at neighborhoods and individuals who are disproportionately Asian American and/or Latino, thereby violating the equal protection provisions of the Fourteenth Amendment.

101.   Accordingly, Plaintiffs and the class they seek to represent seek relief in the form set forth in paragraphs 92-93 above.

## II.     FEDERAL EMPLOYEES LIABILITY ACT, 45 U.S.C. § 51

102.   Plaintiffs repeat and re-allege Paragraphs 1 through 101 as is set forth at length herein.

103.   At all relevant times, Defendant MTA was and remains a common carrier engaging in commerce between various states.

104.   Certain members of the class were and continue to be employed by Defendant MTA in furtherance of such commerce within the meaning of 45 U.S.C. § 51.

105.   Certain members of the class have suffered injury during the course of their aforesaid employment with Defendant MTA.

106.   Accordingly, the sub-class of workers employed by MTA seek relief in the form set forth in paragraphs 92-93 above.

### III.   THE CLEAN AIR ACT, 42 U.S.C. § 7604(a)

107.   Plaintiffs repeat and re-allege Paragraphs 1 through 106 as is set forth at length herein.

108.   Plaintiffs and class members are "persons" within the meaning of 42 U.S.C. § 7602(e).

109.   Defendant MTA is the "owner" and "operator" of the elevated structures of the Flushing Line within the meaning of 42 U.S.C. § 7602(e).

110.   Pursuant to the federal Clean Air Act, 42 U.S.C. § 7401 *et seq.*, certain emission standards or limitations have been created in the form of National Ambient Air Quality Standards ("NAAQS"). 42 U.S.C. § 7409, 7410.

111.   The NAAQS for lead is $0.15\mu/m^3$ (0.15 micrograms per cubic meter).

{00032615}                                        26

112.   Further, this standard, involving total suspended particulate specifically contemplates the hazards and persistence in the environment of lead paint and its emissions and is intended to address "near source" exposures. *See* 40 CFR Part 50, 81 FR 201, October 18, 2016.

113.   Defendant MTA's misconduct has violated, continues to violate, and if not remediated, will continue to violate the emission standard or limitation of the Clean Air Act.

114.   Plaintiffs and the class they seek to represent, acting as private attorney generals, pursuant to 42 U.S.C. § 7604(a), the citizen suit provision of the Clean Air Act, seek injunctive relief in the form set forth in paragraphs 92-93 above.

115.   Government enforcers have failed to diligently fulfill their duties under the Clean Air Act.

116.   Plaintiffs have provided notice to the Environmental Protection Agency, New York Department of Environmental Conservation and Defendant MTA.

117.   Accordingly, Plaintiffs and the class they seek to represent seek relief in the form set forth in paragraphs 92-93 above.

## IV.   NEGLIGENCE

118.   Plaintiffs repeat and re-allege Paragraphs 1 through 117 as is set forth at length herein.

119.   Defendant MTA's misconduct (and failure to act) as set forth above constitutes a lack of ordinary care, and demonstrates a failure of defendant MTA to use that degree of care that an ordinary person would have used under similar circumstances.

120.   Defendant MTA's misconduct (and failure to act) as set forth above proximately caused injury and damages to Plaintiffs and the class they seek to represent as well as to their property.

121.   Accordingly, Plaintiffs and the class they seek to represent seek relief in the form set forth in paragraphs 92-93 above.

## V.     BREACH OF AN ASSUMED DUTY

122.   Plaintiffs repeat and re-allege Paragraphs 1 through 121 as is set forth at length herein.

123.   Defendant MTA by its conduct as set forth above assumed a duty with respect to Plaintiffs and the class they seek to represent, in that:

a.  it created a hazardous condition that did not previously exist;

b.  provided false assurances to Plaintiffs and the class they seek to represent that no hazard existed, or, at a minimum that such hazards that did exist had been properly abated or remediated;

c.  failing, in fact to abate or remediate the actual hazards that did exist;

d.  encouraging Plaintiffs and class members  to expose themselves to the above described hazards even at a time when the Defendant MTA knew or should have known that they were already injured or damaged.

124.   Defendant MTA's misconduct (and failure to act) as set forth above proximately caused injury and damages to Plaintiffs and the class as well as to their property.

125.   Accordingly, Plaintiffs and the class  seek relief in the form set forth in paragraphs 92-93 above.

## VI.   TRESPASS

126.   Plaintiffs repeat and re-allege Paragraphs 1 through 125 as is set forth at length herein.

127.   At all relevant times, Defendant MTA's knowing misconduct caused lead, lead-based paint, lead dust, lead-based paint chips, deteriorated lead-based paint and other toxins to enter Plaintiffs' property and the property of class members.

128.   The aforesaid misconduct was such that it was substantially certain that the release of toxins, including lead, lead-based paint, lead dust, lead-based paint chips, deteriorated lead-based paint and particulate, from the elevated

structures of the Flushing Line would proximately cause the entry of these toxins onto the property of Plaintiffs and class members.

129.   This misconduct physically interferes with Plaintiffs and class members' use and enjoyment of their property and inflicts personal injury upon Plaintiffs and class members and causes substantial property damage.

130.   Accordingly, Plaintiffs and the class seek relief in the form set forth in paragraphs 92-93 above.

## VII.   CONVERSION

131.   Plaintiffs repeat and re-allege Paragraphs 1 through 130 as is set forth at length herein.

132.   Defendant MTA's misconduct has knowingly interfered with Plaintiffs and class members' right of possession of their property.

133.   Accordingly, Plaintiffs and the class seek relief in the form set forth in paragraphs 92-93 above.

## VIII.  PRIVATE NUISANCE

134.   Plaintiffs repeat and re-allege Paragraphs 1 through 133 as is set forth at length herein.

135.   Defendant MTA's unreasonable misconduct substantially interfered with Plaintiffs and class members' right to use and enjoy their property.

136.  Defendants' unreasonable misconduct was intentional, or at a minimum, taken with the substantial certainty that it would substantially interfere with Plaintiffs and class members' ability to use and enjoy their property.

137.  Accordingly, Plaintiffs and the class seek relief in the form set forth in paragraphs 92-93 above.

## IX.   PUBLIC NUISANCE

138.  Plaintiffs repeat and re-allege Paragraphs 1 through 137 as is set forth at length herein.

139.  Defendant MTA's knowing, deliberate and intentional misconduct, taken with the substantial certainty that it would interfere with the public use of the streets and thoroughfares underneath and proximate to the elevated structures of Flushing Line, interfered with and damaged Plaintiffs and class members' use and enjoyment of their adjacent property and inflicted personal injury upon Plaintiffs and class members.

140.  Accordingly, Plaintiffs and the class seek relief in the form set forth in paragraphs 92-93 above.

**WHEREFORE**, Plaintiffs DUDLEY STEWART, TAMMY ROSE and EDDIE VALENTIN pray for judgment as follows:

1.     For an order certifying that the action may be maintained as a class action certifying Plaintiffs as representatives of the Class, and designating their counsel as counsel for the Class;

2.     A permanent injunction which would Order the MTA to perform the following:

    a. Have an independent court appointed, qualified inspector conduct a thorough and immediate investigation relating to lead and any other environmental hazard with respect to the elevated structures of the Flushing Line;

    b. Promptly and publically report the results of the aforesaid investigation;

    c. Periodically undertake to have an independent court appointed qualified inspector conduct periodic repeat investigations;

    d. Promptly and publically report the results of the aforesaid investigations;

    e. Have an independent and qualified court appointed inspector immediately investigate the air, streets and soil underneath and in the vicinity of the elevated structures of the Flushing Line for the presence of lead and other toxic substances which may have been released from these structures.

    f. Promptly and publically report the results of the aforesaid investigation;

g. Periodically undertake to have an independent qualified court-appointed inspector conduct repeat investigations of the air, streets and soil;

h. Promptly and publically report the results of the aforesaid investigation;

i. Abate, remediate, cure or otherwise eliminate all hazards associated with the presence of lead, lead-based paint, lead dust, lead-based paint chips, deteriorated lead-based paint or other toxins located on the elevated structures of the Flushing Line;

j. Abate, remediate, cure or otherwise eliminate all hazards associated with the presence of lead, lead-based paint, lead dust, lead-based paint chips, deteriorated lead-based paint or other toxins located on the elevated structures of the Flushing Line which may be revealed by the periodic investigations described above;

k. Abate, remediate, cure or otherwise eliminate all hazards associated with the presence of lead, lead-based paint, lead dust, lead-based paint chips, deteriorated lead-based paint or other toxins located in the air, streets and soil underneath and in the vicinity of the elevated structures of the Flushing Line which are revealed by immediate investigation;

l. Abate, remediate, cure or otherwise eliminate all hazards associated with the presence of lead, lead-based paint, lead dust, lead-based paint chips, deteriorated lead-based paint or other toxins located in the air, streets and

soil underneath and in the vicinity of the elevated structures of the Flushing Line which may be revealed by the periodic investigations described above;

m. Provide to class members, upon request, blood or other appropriate testing to ascertain whether they suffer from clinical findings related to the release of toxins from the elevated structures of the Flushing Line that require medical intervention.

3.    An award to Plaintiffs of reasonable attorney fees, expenses and expert fees in bringing and maintaining this action.

4.    An award of any other relief that the Court deems just and proper under the circumstances of this case.

Plaintiffs request trial by jury on all issues properly submitted to a jury.


**DATED**: New York, New York
          May 22, 2017

                              **PHILLIPS & PAOLICELLI, LLP**


                              By:_____
                                 Steven J. Phillips [9658]
                                 Daniel J. Woodard [8846]
                                 747 Third Ave, 6th Floor
                                 New York, NY 10017
                                 Tel: (212) 388-5100
                                 Fax: (212) 388-5200

{00032615}                          34